IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| AMERICAN PACIFIC TEXTILE, INC., *et al.,* | Case No: 1:10-CV-00018 |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| HONG KONG (OVERSEAS) INVESTMENT, LTD., *et al.,* | Case No. 1:10-CV-00019 |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

I.  INTRODUCTION

Defendant United States of America ("the Government") has moved for judgment on the pleadings in these two cases. Because the actions involve common questions of law and fact, they were joined for hearing on the motion. *See* Fed. R. Civ. P. 42(a)(1).

Plaintiffs are companies that employed thousands of foreign contract workers in garment factories in the Commonwealth of the Northern Mariana Islands (CNMI) between 2004 and 2008. They are suing on their own behalf, and on behalf of some of their former employees, to

recover taxes that the federal Government collected pursuant to the Federal Insurance Contributions Act ("FICA"). The legal question turns on the applicability of certain provisions of FICA to wages earned for work performed by foreign workers in the CNMI.

After full briefing, the motion for judgment on the pleadings was heard on October 4, 2012. Upon review of the filings[1] and the oral arguments of counsel, the Court now grants the motion, renders judgment for the Government, and dismisses the complaints, for the reasons explained herein.

## II. BACKGROUND

### a. FICA Taxes and the Covenant

Under FICA, employees and employers pay taxes to fund Social Security and Medicare. Employees pay a 6.2 percent tax on wages received "with respect to employment." 26 U.S.C. § 3101(a). Employers pay an equal amount as an excise tax on wages paid, likewise "with respect to employment." 26 U.S.C. § 3111(a). For purposes of FICA, "employment" is defined, in relevant part, as "any service . . . performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or . . . (B) outside the United States by a citizen or resident of the United States as an employee for an American employer . . ." 26 U.S.C. § 3121(b). When the term "United States" is "used in a geographical sense," it "includes the Commonwealth of Puerto Rico, the Virgin Islands, Guam,

---

[1] In this listing, the first ECF number refers to the filing in 1:10-CV-00018, the second to the filing in 1:10-CV-00019: Government's Motion for Judgment on the Pleadings as to All Claims ("MJOP," ECF No. 7/16); First Declaration of David W. Axelrod in Support of Plaintiffs' Opposition (ECF No. 15/25) (including addendum of 23 documents); Second Declaration of Adrian L. de Graffenreid (ECF No. 16/26) (with two exhibits, including a prior declaration of de Graffenreid); Declaration of Alexis Fallon in Support of Plaintiffs' Opposition (ECF No. 17/27) (including 8 exhibits); Second Declaration of David W. Axelrod in Support of Plaintiffs' Opposition (ECF No.19/29) (including 7 exhibits); Plaintiffs' Opposition (ECF No. 20/30); Government's Reply (ECF No. 25/41); Stipulation to Supplement the Record (ECF No. 27/43) (including 5 exhibits). Page references are to the ECF pagination.

and American Samoa." 26 U.S.C. § 3121(e)(2). The CNMI is not listed within this definition of "United States."

The Government's asserted basis for imposing FICA taxes on wages earned in the CNMI is found in certain provisions of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), Pub. L. No. 94-241, 90 Stat. 263, *codified as* 48 U.S.C. § 1801 note. The Covenant governs relations between the Northern Mariana Islands and the United States. Covenant § 102. After World War II, the Northern Mariana Islands were administered by the United States pursuant to a Trusteeship Agreement with the United Nations Security Council. *See United States ex rel. Richards v. Guerrero,* 4 F.3d 749, 751 (9th Cir. 1993). Negotiations between the United States and the people of the Northern Marianas eventuated in a new political status as set forth in the Covenant. *Id.* Most of the Covenant's provisions became effective in 1976, when the Covenant was signed into law by President Gerald Ford after approval by local plebiscite and congressional resolution. *Id.* The Covenant came into full effect on November 3, 1986, upon termination of the Trusteeship Agreement with respect to the CNMI by presidential proclamation. *Id.*

Article VI of the Covenant concerns revenue and taxation. It establishes what is commonly called a "mirror code" system, whereby "[t]he income tax laws in force in the United States" came into force in the CNMI as a "local territorial income tax, . . . in the same manner as those laws are in force in Guam." *Id.* § 601(a); *see also Armstrong v. Northern Mariana Islands,* 576 F.3d 950, 953 (9th Cir. 2009). Section § 601(c) of the Covenant provides that "[r]eferences in the Internal Revenue Code to Guam will be deemed also to refer to the Northern Mariana Islands, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof or of this Covenant." The applicability of excise taxes that support Social Security is addressed in Covenant § 606(b): "Those laws of the United States which impose excise and self-

3

employment taxes to support or which provide benefits from the United States Social Security System will . . . become applicable to the Northern Mariana Islands as they apply to Guam." The outcome of these cases turns on the interpretation of Sections 3121(b) and (e) of the Internal Revenue Code ("IRC") and the applicable sections of the Covenant as to whether the employees' services were performed "within" or "outside" the United States.

### b. The *Zhang* Litigation

This precise issue has already been litigated by a group of CNMI foreign workers and one CNMI employer, Hyunjin (Saipan) Corporation, in the United States Court of Federal Claims. *See Zhang v. United States,* 89 Fed. Cl. 263 (Fed. Cl. 2009) (hereinafter *Zhang I*). That court rejected the same arguments that Plaintiffs raise here, and granted judgment on the pleadings to the United States. On appeal, the Federal Circuit affirmed. *See Zhang v. United States,* 640 F.3d 1358 (Fed. Cir. 2011), *cert. denied,* 132 S. Ct. 2375 (2012) (hereinafter *Zhang II*). The parties, in their briefs, refer extensively to the two *Zhang* decisions. They do not distinguish the facts or law applicable in the instant case from those that pertained in the *Zhang* litigation. Plaintiffs assert that *Zhang I* and *Zhang II* were wrongly decided, whereas the Government maintains that those decisions were correct. The instant litigation is, practically speaking, a second bite at the apple.

The Government has not asserted as a defense that Plaintiffs should be precluded from relitigating the issue. Because the doctrine of issue preclusion vindicates not only private interests but also the public interest in "avoiding inconsistent results and preserving judicial economy," the court may raise it on its own. *Clements v. Airport Auth.,* 69 F.3d 321, 330 (9th Cir. 1995). If the relationship between claimants in different actions is "sufficiently close," they may be found to be in privity and precluded from relitigating the issue. *See United States v. Bhatia,* 545 F.3d 757, 759 (9th Cir. 2008). Privity may exist where a nonparty "assumed control"

4

of a previous action so that it is fair to bind it by the prior judgment. *Id.* The facts as developed in the record of the instant litigation do not demonstrate that the Plaintiffs had control over the *Zhang* litigation or support a finding of privity.

The question, then, is what bearing the *Zhang* decisions should have on this case. Because *Zhang* was litigated in a different circuit, *Zhang II* is not controlling. It is noteworthy, however, that in *Zhang I* the district court was "guided by the Ninth Circuit's decisions regarding the CNMI and consider[ed] its construction of the Covenant to be authoritative." *Zhang I,* 89 Fed. Cl. at 271. Moreover, this Court is mindful that because "[u]niformity among the circuits is especially important in tax cases to ensure equal and certain administration of the tax system[,]" it should "hesitate to reject the view of another circuit." *First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir. 1982). Therefore, where the reasoning in the two *Zhang* decisions is sound and is based on a thorough review of the record, the Court may find it persuasive.

### III. LEGAL STANDARDS

Any party may move for judgment on the pleadings once the pleadings are closed, so long as consideration of the motion does not delay trial. *See* Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper when the moving party has clearly established on the face of the pleadings that no material fact is in dispute and it is entitled to judgment as a matter of law. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989). All material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *See Living Designs, Inc. v. E. I. Dupont de Nemours & Co.,* 431 F.3d 353, 360 (9th Cir. 2005).

Judgment on the pleadings is proper when the plaintiff fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(h)(2)(B); *McGlinchy v. Shell Chemical Co.* 845 F.2d

802, 818 (9th Cir. 1988). Because a Rule 12 (c) motion for judgment on the pleadings and a Rule 12(b)(6) motion for judgment for failure to state a claim are "essentially the same," the same standard of review applies to both. *See Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989). To survive the motion, a plaintiff need only allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pinnacle Armor, Inc. v. United States,* 648 F.3d 708, 721 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Legal conclusions, however, need not be accepted as true. *Iqbal,* 556 U.S. at 678.

If materials outside the pleadings are submitted for consideration and the court accepts them, the Rule 12(c) motion should be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Bingue v. Prunchak,* 512 F.3d 1169, 1172 n.4 (9th Cir. 2008). A document is not outside the pleadings if a pleading "specifically refers to the document and if its authenticity is not questioned." *Inlandboatmens Union of the Pac. v. Dutra Group,* 279 F.3d 1075, 1083 (9th Cir. 2002)

### IV.   DISCUSSION

This matter is fit to be resolved on the pleadings –Plaintiffs' complaints and the Government's answers in the two cases. There is no dispute of material fact. The only question is a legal one: whether FICA taxes are payable on services of nonresident foreign workers employed in the CNMI from 2004 to 2008.

Plaintiffs maintain that they do not have to pay FICA taxes on work performed by their noncitizen employees because (1) the CNMI is not "within the United States" with respect to employment for FICA tax purposes, and (2) employee FICA taxes are not excise taxes within the meaning of Covenant § 606(b) and therefore not authorized.

//

//

### a. CNMI Is Part of the United States for FICA Purposes

The CNMI is not listed in the definition of the United States "when used in a geographical sense" in 26 U.S.C. §3121(e), but Guam is. Covenant § 601(c) directs that references in the IRC to Guam be deemed also to refer to the CNMI "where not otherwise distinctly expressed or manifestly incompatible with the intent thereof or of this Covenant." Thus, if the term "United States" is used in a geographical sense within the Code's definition of employment (26 U.S.C. § 3121(b)), the CNMI must be deemed "within the United States" for purposes of employment, absent express exclusion or manifest incompatability.

Plaintiffs strenuously resist this logic. They offer a raft of arguments that the CNMI should not be considered within the geographical United States for purposes of the FICA tax. They assert that that the CNMI was not a part of the geographical United States during the period in question; that Congress did not intend to include the CNMI within the geographical United States for purposes of application of FICA taxes; and that the Covenant did not envision placing the CNMI within the United States.

In particular, Plaintiffs object to a finding that their noncitizen workers were employed "within the United States" for FICA tax purposes when those same workers, during the relevant period, were never "within the United States" under United States immigration law. Covenant § 503(a) exempted the CNMI from most United States immigration and naturalization laws "except in the manner and to the extent made applicable to them by the Congress by law after termination of the Trusteeship Agreement." For more than twenty years after termination of the Trusteeship Agreement in 1986, the CNMI maintained its own regime of laws regulating the temporary admission of nonimmigrant foreign workers. *See, generally, N. Mariana Islands v. United States,* 670 F. Supp. 2d 65, 72 (D.D.C. 2009). These workers were admitted into the CNMI but not the United States.

In 2008, Congress passed the Consolidated Natural Resources Act ("CNRA," Pub. L. No. 110-229, 122 Stat. 754, 853 (2008)). Title VII of the CNRA gradually applied federal immigration laws to the CNMI beginning on the "transition program effective date," which turned out to be November 28, 2009. *See id.* Prior to 2009, the definition of the term "United States" when used in the geographical sense in the Immigration and Nationalities Act ("INA"), 8 U.S.C. § 1101(a)(38), expressly included Guam but not the CNMI.

Plaintiffs maintain that the pre-2009 INA definition of the "geographical" United States has a bearing on whether FICA taxes were properly imposed on the wages of foreign contract workers in the CNMI. They criticize *Zhang II* for treating as within the United States "nonimmigrant alien workers who were never admitted into the United States under the [INA] that defines the 'geographic' United States[.]" (Opp. at 10.) They frame the issue as whether the United States and the Northern Mariana Islands "intended to include the future CNMI geographically 'in the United States'" for FICA tax purposes. (Opp. at 11.) They rail against the "mechanical substitution method of [statutory] construction" (Opp. at 28) that would end the inquiry if within the employment definition of Section 3121(b) the United States is used in a geographical sense.

They never assert, however, that the United States is used in any other sense within that definition. Nor could they do so sensibly. One of the "first principles" of statutory construction is that "courts should interpret a statute according to its plain meaning." *Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 896 (9th Cir. 2005). If the statutory language is unambiguous, "the plain meaning controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir. 1999). The meaning of the phrase "when used in a geographical sense" is clear on its face, without resort to an inquiry into the legislative history. It is a routine part of definitions of the

term "United States" in dozens of sections of the United States Code.[2] Its purpose is not to limit the reach of statutes – that purpose is accomplished by the listing of states and territories within the definition – but to avoid obviously nonsensical results. An excellent example is one of Plaintiffs' favorite passages in the employment definition. The term "employment," in addition to referring to services performed within the United States by any employee regardless of his or her citizenship or residence, also includes services performed "outside the United States by a citizen or resident of the United States as an employee for an American employer . . ." 26 U.S.C. § 3121(b)(B). In the phrase "outside the United States" the term "United States" is used geographically; in the phrase "citizen or resident of the United States," it is not. It would be absurd if the determination of a person's citizenship depended on whether his or her wages were subject to FICA taxes.

Properly framed, the initial issue is not whether Congress intended the CNMI to be part of the United States in a geographical sense for FICA tax purposes, but whether the employment definition in Section 3121(b) uses the term "United States" in a geographical sense. Clearly, it does. That is why, indisputably, the Code imposes FICA taxes on the wages of all employees, irrespective of their citizenship, for services performed on Guam. *See Zhang II,* 640 F.3d at 1365.

Through Covenant § 601(c), the reference to Guam is deemed also to refer to the CNMI, unless (1) it is "otherwise distinctly expressed" or (2) it would be "manifestly incompatible" with the intent of the Code or the Covenant to do so. Plaintiffs assert that Congress's failure to amend Section 3121(e) to expressly include the CNMI, despite ample opportunity to do so in the decades since the Covenant was approved, amounts to a "purposeful omission." (*See* Opp. at 10.)

---

[2] A search of the LEXIS United States Code Service (USCS) Materials database retrieved 61 hits for the term "used in a geographical sense" with respect to "United States." The same search of the Westlaw United States Code Annotated (USCA) database retrieved 63 hits.

In support, they point to two pieces of legislation passed by Congress during the interim period between approval of the Covenant in 1976 and full implementation in 1986. First, in 1981, Congress amended the definition of "State" in the Social Security Act ("SSA") to expressly include the CNMI with respect to some provisions but not others. *See* 42 U.S.C. § 1301(a)(1). In particular, the CNMI was excluded from Title II programs supported by FICA taxes.

Second, in 1983, Congress passed Public Law No. 98-213, 97 Stat. 1459, 1464, which Congress passed in 1983 ("1983 Act"). Section 19 of the 1983 Act states:

> (a) The President may . . . by proclamation provide that the requirement of United States citizenship or nationality provided for in any of the statutes listed on pages 63-74 of the Interim Report of the Northern Mariana Islands Commission on Federal Laws [January 1982] . . . shall not be applicable to the citizens of the Northern Mariana Islands. . . .
> (b) A statute which denies a benefit or imposes a burden or a disability on an alien, his dependents, or his survivors shall, for the purposes of this Act, be considered to impose a requirement of United States citizenship or nationality.

1983 Act § 19, 97 Stat. at 1464. Plaintiffs maintain that in Section 19(b) Congress relieved all noncitizen employees in the CNMI of the "burden" of FICA taxes. (*See* Opp. at 30.)

This argument as to the 1981 and 1983 changes in federal law is unconvincing. To accept it would be to find that Covenant § 601(c) has been effectively repealed by subsequent legislation. Yet as the Federal Circuit observed, "[c]onstruing a statute as a repeal by implication is generally disfavored." *Zhang II,* 640 F.3d at 1368; *accord Nigg v. United States Postal Serv.,* 555 F.3d 781, 786 (9th Cir. 2009). The legislature's intention to repeal must be "clear and manifest." *Nigg,* 555 F.3d at 786 (quoting *Morton v. Mancari,* 417 U.S. 535, 551 (1974)). Courts "presume that by passing a new statute Congress ordinarily does not intend to displace laws already in effect." *United States v. Novak,* 476 F.3d 1041, 1052 (9th Cir. 2007).

In the SSA definition, Congress needed to distinguish the CNMI from Guam because not all SSA benefits apply in the CNMI. Rather than establishing a precedent that Congress will and must name the CNMI separately from Guam whenever it intends to include it – a move that

would eviscerate Covenant § 601(c) – Congress's amendment of 42 U.S.C. § 1301(a)(1) is in step with Covenant § 601(c)'s carve-out provision.

In Section 19 of the 1983 Act, Congress ensured that Northern Marianas citizens, who would not become American citizens until the eventual termination of the Trusteeship Agreement, would not be cut out of certain federal benefits in the interim. The "alien[s]" referred to in subsection (b) are the "citizens of the Northern Mariana Islands" of subsection (a). The claims court and the Federal Circuit explored the legislative history of the 1983 Act thoroughly and came to this same conclusion. *See Zhang I,* 89 Fed. Cl. 263, 285 ("Reading the statute as a whole, . . . the purpose behind section 19 of the 1983 Act was to give to the citizens of the CNMI the same statutory benefits that they would enjoy upon automatically attaining U.S. citizenship at the termination of the Trusteeship Agreement"); *Zhang II,* 640 F.3d at 1367–70. Their analysis is persuasive. Most important, in terms of this Court's approach to the issue, is that it shows Section 19 of the 1983 Act is not a distinct expression of congressional intent to override the Covenant § 601(c) reference to Guam.

Application of the Section 601(c) reference is not manifestly incompatible with the intent of the Covenant or the IRC. In discerning the meaning of the Covenant, the Ninth Circuit frequently relies on the Marianas Political Status Commission's Section by Section Analysis of the Covenant ("Analysis"). *See N. Mariana Islands v. United States,* 399 F.3d 1057, 1065 (9th Cir. 2005). In support of Covenant § 601, the Analysis states, "It is desirable that Guam and the Northern Marianas have coordinated tax laws since they operate in the same economic and geographic sphere." Analysis 67–68. The purpose of the reference provision of Section 601(c) is to "assure[] that the benefits which are available to Guam under the Internal Revenue Code will also be available to the Northern Marianas." *Id.* at 71. To require noncitizen employees and their

employers to pay into the Social Security and Medicare systems from which they will derive benefits is not manifestly incompatible with this intent.

Plaintiffs assert that Ninth Circuit precedent compels the district court to consider post-Covenant legislative acts and omissions to determine when to apply tax laws to the CNMI in the same manner as they apply in Guam. In *Armstrong v. Northern Mariana Islands,* 576 F.3d 950 (9th Cir. 2009), *cert. denied,* 130 S. Ct. 3500 (2010), plaintiff sued in federal court to recover income tax rebates and accrued interest under the CNMI's local territorial tax code. Armstrong maintained that because a federal district court has subject matter jurisdiction over disputes with respect to Guam's tax code, and Covenant §601(a) provides that United States tax law is in force in the CNMI "in the same manner as . . . in Guam," federal courts must likewise have jurisdiction over disputes concerning the CNMI tax code. *Id.* at 956. In rejecting this argument, the Ninth Circuit went outside the plain text of the Covenant, turning to legislative history and the CNMI's Income Tax Act of 1982 and 1984 for evidence of the Commonwealth's intent to ensure that local tax disputes be adjudicated in local courts. *Id.* at 957.

Plaintiffs' reliance on *Armstrong* is misplaced, for two reasons. First, the Ninth Circuit's analysis in *Armstrong* rested primarily on a reading of the plain text of the applicable provisions of the Covenant, the Guam Organic Act, and the IRC. The court observed that whereas the Organic Act expressly provides, at 48 U.S.C. § 1421i(h)(1), that "the District Court of Guam shall have exclusive original jurisdiction" over Guam income tax cases, "[n]o similar provision exists in the Covenant[.]" *Id.* at 956. It contrasted Covenant § 601's explicit reference to enforcement of federal income tax laws as a "local territorial income tax" with the absence of similar language in 48 U.S.C. § 1421i. It is not unusual for a court to find support for its interpretation in a statute's legislative history, even when it "need not go beyond the plain

12

language" of the enactment. *United States v. Ye,* 436 F.3d 1117, 1121 (9th Cir. 2006). Legislative history buttressed the plain-text analysis in *Armstrong* but was not central to it.

Second, in *Armstrong* the Covenant was silent as to issue before the court, subject matter jurisdiction. A court may look to legislative history "in order to gain insight into the pertinent text" of a statute that "has no plain meaning." *N. Cal. River Watch v. Wilcox,* 633 F.3d 766, 776 n.10 (9th Cir. 2011). However, it should not overly rely on "subsequent legislative history to contradict the 'plain text and import' of a statutory provision. *Id.* (quoting *Solid Waste Agency v. U.S. Army Corps of Engineers,* 531 U.S. 159, 170 (2001)).

It is clear from the plain text of Covenant § 601(c), which has not been repealed or amended, that references to Guam in the IRC also refer to the CNMI. Such reference in 46 U.S.C. § 3121(e)'s definition of the term "United States" is not manifestly incompatible with the intent of the IRC or the Covenant. Therefore, the CNMI is "within the United States" (§ 3121(b)) with respect to employment for FICA tax purposes.

b. The Employee FICA Is an Excise Tax Within the Meaning of Covenant § 606(b)

Section 606 of the Covenant applies to the CNMI "[t]hose laws of the United States which impose excise and self-employment taxes to support or which provide benefits from the United States Social Security System."  Covenant § 606(b).  Social Security is funded by taxes that employees and employers pay under FICA.  See, e.g., *McDonald v. S. Farm Bureau Life Ins. Co.,* 291 F.3d 718, 724 (11th Cir. 2002); *Temple Univ. v. United States,* 769 F.2d 126, 130 (3d Cir. 1985); *see also* 26 U.S.C. §§ 3101–3112.  Plaintiffs contend that employees' share of FICA taxes (hereinafter "employee-FICA taxes"), but not employers' share (hereinafter "employer-FICA taxes"), are not excise taxes and instead are income taxes.  (Opp. at 21–23.)  If employee-FICA taxes are an income tax, they would not be authorized under Section 606(b). For support, Plaintiffs cite *Helvering v. Davis,* 301 U.S. 619 (1937), where the Supreme Court recognized

under Title VIII of the Social Security Act "two different types of tax, an 'income tax on employees,' and 'an excise tax on employers.'" *Helvering,* 301 U.S. at 634–35.

Plaintiffs' reliance on *Helvering* is problematic for two reasons. First, *Helvering* does not actually involve FICA taxes. It was decided before FICA's existence, when these taxes were incorporated into the Social Security Act itself, under Title VIII. See *Helvering,* 301 U.S. at 635 (discussing taxes codified into Title 42, not the IRC's Title 26). In 1939, these taxes were removed from the Social Security Act and placed in the Internal Revenue Code, where they were classified as FICA taxes. *See* What is the Meaning of FICA, Social Security, http://ssa-custhelp.ssa.gov/app/answers/detail/a_id/392/~/what-is-the-meaning-of-fica (last visited Mar. 14, 2013); *see also* Pub. L. No. 76-379, § 601, 53 Stat. 1360, 1381–87 (1939); *also* 26 U.S.C. § 3101.

Second, to the extent that *Helvering* is relevant, it is not dispositive. The issue is not whether courts have categorized employee-FICA taxes as excise taxes, but whether the Covenant classifies them as such. *Helvering* is relevant to the extent that it provides linguistic meaning to excise taxes—that it does not include employee-FICA taxes—and that this meaning may have been intended for the Covenant. But even then, *Helvering* is of only limited relevance because other sources furnish the alternative linguistic meaning that employee-FICA taxes *are* excise taxes. *See, e.g., William C. McCombs Co. v. United States,* 436 F.2d 979, 983 (Cl. Ct. 1971) ("The sole issue is whether applicators should be classified as employees for purposes of the excise tax provisions of the Federal Insurance Contributions Act . . . ."). No source external to the Covenant can illuminate which meaning the Covenant's drafters intended for Section 606(b).

The meaning of excise taxes under § 606(b) includes employee-FICA taxes. The Covenant's legislative history compels this conclusion. The Analysis of the Marianas Political Status Commission states that all taxes supporting the Social Security system, excise or not,

14

apply to the CNMI. Analysis at 80 ("[T]hose laws of the United States which impose taxes to support the United States Social Security System will become applicable [to the Commonwealth]."). Congressional reports of the same vintage state the same, that all taxes relating to Social Security apply to the CNMI.  H.R. Rep. No. 94-364, at 11 (1975) ("Subsection (b) assures that the laws of the United States which impose taxes to support or which provide benefits from the United States Social Security System will become applicable to the Northern Marianas . . . ."); S. Rep. No. 94-433, at 82–83 (1975) ("The laws of the United States relating to Social Security contributions and benefits will be introduced to the Northern Mariana Islands . . . . Subsection (b) assures that the laws of the United States which impose taxes to support or which provide benefits from the United States Social Security System will become applicable to the Northern Marianas . . . .").  Because employee-FICA taxes support this system, these taxes apply to the CNMI.

This is the same conclusion reached by the Federal Circuit.  *See Zhang II,* 640 F.3d at 1371–76.  That court consulted many of the same sources, as well as others, in determining that excise taxes under Section 606(b) of the Covenant include employee-FICA taxes.

### V.   CONCLUSION

For the foregoing reasons, the Government's motion for judgment on the pleadings in the two above-captioned cases is GRANTED. The Clerk shall enter judgment for the Government.

SO ORDERED this 19th day of March, 2013.

                                                  /s/ Ramona V. Manglona
                                                  RAMONA V. MANGLONA
                                                  Chief Judge